## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                           |   |               |
|-----------------------------------------------------------|---|---------------|
| LONDY G.                                                  | : |               |
|                                                           | : |               |
| v.                                                        | : |               |
|                                                           | : | NO. 24-CV-5398|
| FRANK BISIGNANO,                                          | : |               |
| Commissioner of Social Security                           | : |               |
|                                                           | : |               |

## O P I N I O N

SCOTT W. REID                                                      DATE: July 15, 2025
UNITED STATES MAGISTRATE JUDGE

     Londy G. brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I recommend that Londy G.'s Request for Review be denied and judgment granted in favor of the Defendant.

I.    *Factual and Procedural Background*

     Londy G. was born on June 25, 1964. Record at 265. He completed four years of college. Record at 284. He worked in the past as an aircraft pilot. *Id*. On January 24, 2022, he filed an application for DIB based on injuries he sustained to his left little finger on March 17, 2021, when his gun accidentally discharged. Record at 116-117, 263, 283.

     On March 22, 2022, Londy G.'s application for benefits was denied. Record at 177. It was denied upon reconsideration on January 6, 2023. Record at 184. Londy D. then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 189. A hearing was held in this matter on August 30, 2023. Record at 111.

On November 1, 2023, the ALJ issued a written decision denying relief. Record at 87. The Appeals Council denied Londy G.'s request for review on August 8, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Londy G. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Londy G. suffered from the severe impairment of a "gunshot wound to smallest finger of the left hand status-post surgery."  Record at 89.  He did not find that this impairment met or medically equaled the severity of one of the listed impairments.  Record at 89-90.

The ALJ wrote:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §404.1567(c), except lift and carry 50 pounds occasionally and 25 pounds frequently; sit for 6 hours; stand/walk for a total of 6 hours; occasional climbing ladders, ropes, and scaffolds; with one hand, no more than frequent reaching, handling, feeling and fingering; with the other hand, unlimited reaching, handling, feeling and fingering; and avoid concentrated exposure to hazards, machinery, or chemicals.

Record at 90.

Relying on the testimony of a vocational expert who appeared at the hearing, the ALJ found that Londy G. could work as a store laborer, bagger, or packer of agricultural produce. Record at 94. He decided, therefore, that Londy G. was not disabled.

In his Request for Review, Londy G. argues that the ALJ erred in giving greater weight to the opinions of the agency reviewing medical experts than to the report of the consulting medical expert. He also seeks remand for consideration of evidence he submitted to the agency subsequent to the ALJ's decision.

IV.     *Discussion*

    A.     *The Medical Opinion Evidence*

Independent consulting examiner Ziba Monfared, M.D., examined Londy G. on October 12, 2022. Record at 436. Dr. Monfared found Londy G. to have a normal gait and stance, full strength in all four extremities, and no muscle atrophy. Record at 437-8. Despite a "limitation of movement in the digits of the left hand," and a lack of dexterity in that hand, Londy G. had "grip strength 100% full bilaterally." Record at 438. On a range of motion chart, however, Dr. Monfared estimated that Londy G. had only 2/5 strength in his left hand. Record at 450. The reason for this inconsistency is unclear.

Dr. Monfared indicated in a Medical Source Statement form that Londy G. could lift ten pounds frequently, and twenty pounds occasionally. Record at 440. She checked off that he could handle, finger, or feel, only occasionally with the left hand, but continuously with the right hand. Record at 442. He could frequently (but not continuously) climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. Record at 443. He could frequently – but, again, not continuously – operate foot controls. Record at 442. He could only occasionally be exposed to extreme cold. Record at 444.

The ALJ did not find Dr. Monfared's opinion persuasive, writing that it was not supported by the medical evidence in the record, or consistent with the record as a whole. Record at 93. He continued:

> Dr. Monfared noted that the claimant had 2/5 grip strength in the left hand; however, the claimant's treatment notes reflect that the claimant's left hand grip strength was 50 pounds in September, 2022, 100 pounds in January 2023, 95 pounds in March 2023, 90 pounds in April 2023, and 65 pounds in July 2023. In fact, in June 2023, it was noted that the claimant was very close to touching the finger to the palm of the hand in order to qualify for his flight test. There is nothing in the record to support that the claimant has any limitations with foot controls. Dr. Monfared opined that the claimant should avoid occasional exposure to extreme cold; however, evidence in the record does not reflect that the claimant's symptoms exacerbated secondary to exposure to wetness and humidity.

Record at 93.

Clearly, the ALJ's analysis of Dr. Monfared's opinions has a fault: the ALJ criticized Dr. Monfared for finding that Londy G. was limited in his exposure to wetness and humidity, where she in fact found that he was unlimited in that area. Record at 444. Other than this, however, the analysis is well-supported. Nothing in Dr. Monfared's examination results would explain a limitation in foot controls, since Londy G. was said to have full strength in his legs, and no abnormality in his feet or back was observed. Nor did any other piece of medical evidence in the record reflect examination, treatment, or physical therapy related to Londy G.'s use of his feet or legs.

The ALJ also accurately set forth the evidence regarding Londy G.'s grip strength. Record at 457, 517, 523, 527. On January 20, 2023, when Londy G.'s grip strength in his left hand was measured at 100 pounds, his physical therapist wrote: "His grip strength is more than adequate. As I informed him today is [*sic*] actually higher than the average." Record at 527. In July, 2023, Londy G.'s grip strength was only measured at 65 pounds. Record at 510. If 100 pounds is above average, however, 65 pounds would still be more than 2/5 of full strength.

5

Indeed, Michael John Brown, D.O., a specialist in occupational medicine who reviewed Londy G.'s medical records for the agency on reconsideration, explicitly disagreed with Dr. Monfared's finding: "The 2/5 left grip at the [consultative examination] is not supported by the 50 pound grip at the tx MER [treatment medical records]… and no atrophy to support such a limit of 2/5 (feigned behavior is suggested here)." Record at 169. Dr. Brown concluded that Londy G. could engage in work at the medium exertional level, with limits only in handling and fingering with the left hand, and in climbing ladders. Record at 167-8. This was the same RFC assessment reached by David Paul Clark, M.D., on initial review on March 22, 2022. Record at 159. Since Drs. Brown and Clark found that Londy G. would have that capacity with a 50-pound grip, they would certainly find him to have at least that capacity with a 65-pound grip.

The ALJ noted the same grip-test results cited above in finding that the assessments by Drs. Brown and Clark were consistent with the medical evidence of record. Record at 92. The ALJ also pointed to times where Londy G. denied having hypersensitivity in his left hand. *Id*., and Record at 509 (July 8, 2023); 523 (March 23, 2023). Citing these factors, he found that the reports from Drs. Brown and Clark were persuasive.

Further, nothing in the medical records viewed by the ALJ compelled a conclusion that Dr. Monfared's opinions were more persuasive than those of Drs. Brown and Clark. The treatment notes in the record are all from either the surgeries performed on Londy G.'s left little finger, or the physical therapy in which he participated to regain strength and flexibility in that finger.

The notes include complaints of pain significant enough to interfere with Londy G.'s sleep. Record at 397, 399. Nevertheless, in a February 8, 2022, treatment note, Richard Tosti, M.D., Londy G.'s hand surgeon, wrote: "He is doing a lot better with therapy … On exam today

6

he is about 1.5 cm away from touching the palm with the small finger … He is continuing to make improvements with strength and motion." Record at 388. The ALJ mentioned Dr. Tosti's remark as to the increased flexibility in Londy G.'s left little finger several times in his decision. Record at 92 (first and second full paragraphs), 93.

Overall, then, the treatment notes are consistent with the ALJ's conclusion that Londy G. was limited in the use of his left hand, but not precluded from using it, and that he had no other significant physical limitations. Record at 90. As to pain, it is notable that Londy G. was only using over-the-counter pain medication at the time of his hearing. Record at 121.[1]

Thus, substantial evidence supports the ALJ's decision that the opinions of Drs. Brown and Clark as to Londy G.'s functional capacity were more persuasive than those of Dr. Monfared. Further, since the ALJ discussed in his opinion (1) the grip strength records; (2) Dr. Brown's opinions; (3) Dr. Clark's opinions; and (4) treatment notes showing progress as to flexibility, it is impossible to accept Londy G.'s argument that the ALJ failed to articulate the basis for his decision in this regard. It is by no means necessary for the ALJ to have recapitulated all this evidence in the paragraph where he discussed Dr. Monfared, because the decision – when read as a whole – is obviously capable of meaningful judicial review. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

---

[1] A record from December 5, 2023, which Londy G. submitted after the ALJ issued his decision, includes this observation: "He is a commercial airline pilot, limited meds to use based upon FAA." Record at 33. The ALJ's decision, however, assumes that Londy G. can no longer work as a pilot. Record at 93. Whether Londy G. could access more effective pain relief if he were no longer trying to meet FAA standards is a medical and personal decision which this Court is not qualified to make. However, the idea does suggest itself.

B.   *Sixth-Sentence Remand*

Londy G. asks that this case be sent back to the Commissioner in a "sixth-sentence remand" so that the ALJ can consider a nerve conduction study dated September 19, 2023, conducted by Amy Fitzsimmons, MD, a specialist in physical medicine and rehabilitation. The test results and Dr. Fitzsimmons' treatment note of the same day were submitted for the first time to the Appeals Council in December 2023. Record at 60, 64-9.

Logically, in deciding whether an ALJ's discussion was supported by substantial evidence, a District Court can consider only evidence which was presented to the ALJ before his decision was issued. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Where medical evidence was presented for the first time before the Appeals Council, the District Court can remand the matter to the Commissioner to consider that evidence, but only under conditions set forth in the sixth sentence of 42 U.S.C. §405(g). *Id*. For so-called "sixth-sentence remand," a claimant must prove that the evidence not presented to the ALJ was (1) new; (2) material; and (3) supported by a demonstration of good cause for failure to have the evidence incorporated into the evidentiary record before the ALJ issued a decision. *Id*. at 592-3; *Szubak v. Sec'y of HSS*, 745 F.2d 831, 833 (3d Cir. 1984).

"New" evidence is evidence which is not merely cumulative of what is already in the record. *Szubak*, *supra*. The materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's determination. *Id*. Materiality also requires that the new evidence relate the time period for which benefits were denied. *Id*.

As to good cause, the Commissioner suggests that the standard for the District Court to apply is the same as that applied by the Appeals Council to determine whether it will consider

new evidence. *Defendant's Response* at 14; 20 C.F.R. §404.970(b). There does not, however, appear to be precedent for the courts applying this standard on sixth-sentence remand. Instead, courts more generally consider the claimant's explanation as to "why the proffered additional evidence was not, or could not have been, presented" earlier, with an eye to precluding a claimant from simply seeking "another bite at the apple" in the case of an unfavorable decision by the Commissioner. *Dieter v. Astrue*, Civ. A. No. 11-2023, 2012 WL 1231821 at **4-5 (E.D. Pa. Mar. 21, 2012).

In this case, Londy G. has not shown good cause for his failure to produce these medical records to the ALJ in a timely fashion. On September 19, 2023, when the nerve conduction study took place, or when the results were discussed with Londy G. by Amy Fitzsimmons, M.D., the ALJ had not yet issued a decision. If Londy G. had submitted the test results or Dr. Fitzgerald's treatment note promptly, the ALJ could have considered them in his November 1, 2023, decision. Londy G. has offered no explanation as to why he waited until December, 2023, to submit the records to the Appeals Council. Thus, sixth-sentence remand is unavailable.

In any event, it is not likely that these medical records could be called material, since there is no reasonable likelihood that they would have changed the ALJ's decision. As to the results of neurodiagnostic testing, Dr. Fitzsimmons wrote: "Borderline bilateral Carpal Tunnel Syndrome – I don't think that this is causing him symptoms." Record at 60. She continued: "It is unclear what is the pain generator here. I would expect that if it was local that squeezing his hand would increase the pain which it did not." *Id*. She also noted that Londy G. had 4/5 manual muscle testing for both arms, with no "unilateral wasting." *Id*. Thus, Dr. Fitzsimmons' records do not show that Londy B. was disabled by carpal tunnel syndrome. They are not even supportive of his claim to be disabled by functional limitations in his left hand.

V.       *Conclusion*

       In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE